# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| **CHRISTOPHER RANDALL,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. 09cv11273-NG** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| **Defendant.** | ) |

**GERTNER, D.J.**

## MEMORANDUM AND ORDER
February 15, 2011

## I.    INTRODUCTION

Claimant Christopher Randall ("claimant" or "Randall") appeals the denial of Social Security Disability Insurance ("SSDI") benefits by an Administrative Law Judge ("ALJ"), arguing that the ALJ improperly rejected the opinion of the treating psychotherapist, Stephen Price, Ph.D. ("Dr. Price"), a licensed medical health counselor ("LMHC") and a licensed alcohol and drug counselor ("LADC").

The issue in this case involves the extent to which the claimant's alcohol use affects his disability.  Under the Social Security regulations, an individual is *not* disabled if alcoholism or drug addiction is "a contributing factor material to" the determination that the individual is disabled.  42 U.S.C. § 423(d)(2)(C).  In other words, a claimant is not entitled to disability benefits *unless* his limitations would remain disabling *even in the absence of* drugs or alcohol. Here, Dr. Price, the plaintiff's longtime treating psychoanalyst, opined that alcohol use was not a material factor affecting the plaintiff's disability.  By contrast, agency experts – such as Stanley Rusnak, Ed.D. ("Rusnak"), a psychological consultative examiner, and Charles Lawrence, M.D. ("Dr. Lawrence"), the agency psychologist who provided a mental impairment assessment

without ever examining the plaintiff – opined that alcohol was a material factor to the plaintiff's disability. In the face of the conflicting opinions, the ALJ rejected Dr. Price's opinion in favor of those of Dr. Rusnak and Dr. Lawrence, and eventually determined that the plaintiff was not eligible for benefits.

In this appeal, Randall claims that it was an error for the ALJ to reject Dr. Price's opinion. He argues that Dr. Price should have been given at least equal, if not more, weight than the agency experts because Dr. Price is an "acceptable medical source." He is a specialist in the field of psychotherapy who has treated the plaintiff for several years, and thus is qualified to render an opinion regarding the severity and limiting nature of the plaintiff's mental illness.

The information that is at the center of dispute is Dr. Price's letter of November 24, 2008, in which he opined that he did not believe that the plaintiff's alcohol use was a "materially or substantial contributing factor to his mental limitations." Administrative Record ("A.R.") at 273. This letter reached the ALJ after the hearing (with permission) but well before the ALJ rendered a decision; it was included in the record as Exhibit 16F. Id. The plaintiff argues that the ALJ improperly remains silent about the letter, and that if the ALJ truly found any inconsistencies in Dr. Price's opinion, he was required under the applicable regulations to contact him for further clarification. Pl.'s Mem. at 12-13 (document #13).

The issue in this appeal is thus two-fold: (1) whether Dr. Price has the status of one of the enumerated "acceptable medical sources" and a "treating source" under the regulation; and if so, (2) whether the ALJ erroneously failed to either deal with his letter in the final decision or re-contact the source to clarify any inconsistencies that the ALJ cited as a reason for assigning little weight to his opinion. 20 CFR §§ 404.1527(d)(2), 416.912(d)(2), 404.1512. The plaintiff

answers both questions in the affirmative, and asks this court to reverse the decision of the Commissioner and find him disabled, or in the alternative, remand for a de novo hearing.

For the reasons set forth below, Randall's Motion to Reverse or Remand the Decision of the Commissioner of Social Security **(document #13)** is **GRANTED**, and Defendant's Motion for Order Affirming Decision of Commissioner **(document #14)** is **DENIED**. Because the ALJ's conclusion that Randall's alcohol dependence was a contributing factor material to his disability was not based on substantial evidence on the record, and because the ALJ failed to apply the law correctly when evaluating conflicting medical opinions, the decision of the ALJ is **REMANDED** for a rehearing and further consideration of the application for benefits consistent with this opinion.

## II.     BACKGROUND

### A.     Procedural History

Randall filed an application for SSDI benefits on April 11, 2007, claiming that his period of disability began on December 28, 2006. A.R. at 12. His application was denied at the initial level of review on August 9, 2007. Id. at 26-28. Randall's Request for Reconsideration was denied by a Federal Reviewing Official on March 11, 2008. Id. at 36-39. Upon Randall's written request for a hearing on April 4, 2008, a hearing before an ALJ was held on November 13, 2008. Id. at 48-52; Compl. at *1; Pl.'s Mem. at 1. On February 24, 2009, the ALJ issued a decision against Randall, determining that he was not disabled and thus was not entitled to SSD benefits. A.R. at 10-19; Compl. at *1-2; Pl.'s Mem. at 1. The denial of benefits became final on May 26, 2009, when the Decision Review Board affirmed the ALJ's decision. A.R. at 4-6; Compl. at *2; Pl.'s Mem. at 2. Randall timely filed an appeal in District Court on July 28, 2009. Compl. at *2.

### B. Factual Background

Randall is a forty-nine-year-old man, once briefly married without children, who claims that he is disabled due to anxiety with panic attacks, depression, suicidal ideation, and to a lesser extent pain in his left ankle and back since December 28, 2006, the date at which he sets his onset of disability. A.R. at 55-57, 70, 84; Pl.'s Mem. at 1; Def.'s Mem. at 2 (document #15). He reports that his mental illness at times prevents him from getting in the shower, leaving his house, going to stores to shop, or staying in one place very long, and that the pain in his back and ankle makes it difficult to stand and stay on his feet. A.R. at 70, 87, 91.

Randall has a history of a drinking problem, but it is disputed whether his alcohol dependency is a contributing factor material to his disability, which is key to determining his eligibility for disability benefits. Id. at 16. At the hearing before the ALJ, he acknowledged drinking heavily in late 2006, around the time that he stopped working, but denied that he lost his job because of his alcohol use. Id. at 296-298. Instead, he cited severe panic disorder and back pain as factors interfering with his ability to work. Id. at 284, 287. He stated that he no longer drank as he once used to, but that he continued to drink "a couple of beers" about four times a month. Id. at 293. He nonetheless testified that he could carry out simple instructions, experienced no side effects from his present medication, did his own cooking, laundry, and occasionally cleaning, and otherwise mostly spent his days watching game shows and talk shows on television. Id. at 292-293.

### C. Medical Records and Opinions

#### 1. Mental Impairments

I lay out Randall's medical chronology below by doctor in the order of significance to the dispute in this appeal.

### a.      Stephen Price, Ph.D. ("Dr. Price")

In August 2007, claimant began counseling with Dr. Price, a licensed mental health counselor ("LMHC") and a licensed alcohol and drug counselor ("LADC").  Id. at 166-68; Pl.'s Mem. at 9.  In his first report, Dr. Price listed alcohol abuse as a chronic problem for claimant.  A.R. at 166.  In November 2007, Dr. Price diagnosed the claimant as having agoraphobia with panic disorder after he had complained of frequent anxiety and panic attacks.  Id. at 144-148.  Claimant also reported having recently consumed a bottle of tequila.  Id.. at 145.  In January 2008, claimant reported to both Dr. Price and Nurse Randall (who work together) that he was feeling much better and was continuing to abstain from alcohol despite being around it over the holidays.  Id. at 244-249.  In their reports, however, both Dr. Price and Nurse Randall continued to list alcohol dependence as a chronic problem for claimant.  Id. at 244, 247.

On March 18, 2008, claimant presented to Dr. Price complaining of panic attacks.  Id. at 236-237.  Dr. Price described claimant as appearing agitated and disheveled, with hyperactive psychomotor behavior, pressured speech, labile affect, and an anxious mood.  Id. at 236.  However, Dr. Price also reported that the claimant's impulse control, judgment, and insight were fair; his self-perception was realistic; and he was non-suicidal.  Id. at 236-237.  That same day, Dr. Price completed a medical questionnaire in support of claimant's application for a State disability program.  Id. at 197-203, 236, in which he reported that claimant's severe panic disorder with agoraphobia constituted an impairment that met or was equal to either State standards or the Social Security Listing of Impairments, and was expected to last more than one year.  Id. at 198-199.  Dr. Price opined that claimant had problems understanding and remembering, as well as difficulties driving and showering.  Id. at 202.  However, he also opined that claimant was oriented in all spheres, had "O.K." thought form and cognitive process, had no

limitations in perception and no reduced intellectual function, and was capable of doing some laundry.  Id.  Dr. Price concluded that claimant was not capable of working outside of his home.  Id.

In May 2008, claimant reported feeling "much calmer" on Klonopin, Id. at 219, and although he indicated that he continued to experience panic attacks, the claimant stated that the attacks had "subsided," that he was 75 percent better, and that he was able to go to the store and do grocery shopping.  Id. at 221.  Dr. Price raised claimant's Global Assessment of Functioning ("GAF") score to 50.  Id. at 219-220.

In a mental impairment questionnaire dated July 28, 2008, Dr. Price opined that the claimant had "extreme" limitations in social functioning and activities of daily living; had "constant" limitations in concentration, persistence, and pace; experienced continual episodes of decompensation, Id. at 259; and that claimant's anxiety and panic attacks would last at least twelve months and prevented him from working on a sustained basis.  Id. at 258.

In a letter dated November 24, 2008, Dr. Price acknowledged claimant's history of alcoholism, but stated that during the course of counseling he had never smelled alcohol on claimant's breath, and that claimant had acknowledged drinking only two or three beers on two occasions.  Id. at 273.  Dr. Price opined that claimant's alcohol use was not a materially or substantially contributing factor to his mental limitations, many of which Dr. Price considered to be marked.  Id.

> **b.**      **Stanley E. Rusnak, Jr., Ed.D. ("Rusnak"), the Psychological Consultative Examiner**

On July 20, 2007, claimant underwent a psychological consultative examination with Rusnak, a licensed psychologist.  Id. at 122.  During the examination, claimant reported that he

recently had been capable of drinking thirty beers at a time and had a history of numerous arrests for assault and battery while he was under the influence of alcohol.  <u>Id.</u> at 123.  Rusnak observed claimant to be severely depressed and anxious, but noted that he became less so as the interview progressed.  <u>Id.</u> at 127.  Rusnak rated claimant's insight, judgment, impulse control, general fund of information, ability to do abstractions, and ability to respond to coworkers and supervision as "fair," <u>Id.</u> at 124-126, his ability to respond to work pressures and to carry out and remember instructions as "fair to poor," and his ability to handle stress as "poor," <u>Id.</u> at 126, although he noted that claimant was "likeable, friendly, and cooperative" and was "capable of getting around the community." <u>Id.</u> at 127.  He diagnosed claimant with generalized anxiety disorder and alcohol dependence in partial remission, and assigned him a GAF score of 50, and recommended counseling and evaluation for antidepressants.  <u>Id.</u>

> **c.**      **Charles Lawrence, M.D. ("Dr. Lawrence"), an Agency Psychologist**

On March 7, 2008, Dr. Lawrence reviewed claimant's medical records and provided a mental impairment assessment of him.  <u>Id.</u> at 196.  Citing claimant's history of, and lack of treatment for, substance abuse, Dr. Lawrence opined that claimant's primary mental impairment was substance abuse.  <u>Id.</u>  Noting that claimant's psychological symptoms had subsided during an alleged period of abstinence from alcohol in September and October 2007, Dr. Lawrence concluded that claimant's mental impairment was non-severe in the absence of substance abuse. <u>Id.</u>  In his written case analysis, Dr. Lawrence disagreed with psychological examiner Rusnak's diagnosis of claimant with generalized anxiety disorder on the grounds that there was no symptom of anxiety cited in the report.  <u>Id.</u>

> **d.**      **Medical Expert Testimony by Alfred Jonas, M.D. ("Dr. Jonas"), a Board Certified Psychiatrist**

Dr. Jonas reviewed claimant's medical records and testified as a qualified medical expert. Id. 295.  He opined that, absent substance abuse, claimant was mildly-moderately impaired in activities of daily living, social functioning, and concentration, and that he possibly had experienced one episode of decompensation.  Id. at 301-303.  With substance abuse, Dr. Jonas opined that claimant's limitation in social functioning rose from moderate to marked, and that he had sustained an additional episode of decompensation.  Id. at 303.  Citing claimant's history and testimony regarding his continued use of alcohol, Dr. Jonas pointed out that Dr. Price's clinical assessments did not sufficiently address the role that claimant's substance abuse played in his mental impairments and associated limitations.  Id. at 308.  On claimant's residual functional capacity ("RFC"), Dr. Jonas opined that he could perform routine, repetitive tasks, and could interact with coworkers, superiors, and bosses, but not with the general public.  Id. at 304.  As to physical impairments, Dr. Jonas opined that claimant's back condition would restrict him to lifting and carrying no more than thirty pounds, Id. at 305, but testified that there was no indication in the record that claimant's left ankle condition had resulted in any significant limitations beyond the post-operative recovery period, which would have lasted less than a year after surgery.  Id. at 299.

### e.    Holly Randall, Nurse Practitioner ("Randall")

On August 8, 2007, claimant sought treatment for depression and alcohol abuse from Nurse Randall.  Id. at 179-181.  She diagnosed claimant with depression and acute unspecified alcohol abuse, assigned him a GAF score of 42, and prescribed him Haldol for sleep and nervousness.  Id. at 180.  Claimant returned to Nurse Randall on August 22, 2007, complaining of increased anxiety and paranoia, Id. at 169-171, although he acknowledged sleeping better on

Haldol and said he had quit drinking alcohol because he did not want to die.  Id.  Nurse Randall

adjusted his medication a couple of times in response to his complaints of continued anxiety and

allergic reactions.  Id. at 161-165, 170.  Claimant reported that the counseling sessions and his

five-week abstinence from alcohol were helpful in addressing his issues.  Id. at 163.  On October

1, 2007, claimant reported positively on the adjusted medication (Buspar and Trazodone) in

helping him stay calm, sleep better, and stay in one place for long periods of time.  Id. at 152.

### f.      Vocational Expert Testimony by Carl Barchi

Asked about the job prospects of a hypothetical claimant of the same age, education, and

work experience as Randall, who: (1) could lift/carry twenty pounds occasionally and ten pounds

frequently; (2) could stand and walk with normal breaks for four hours in an eight-hour work

day; (3) could sit with normal breaks for six hours in an eight-hour work day; (4) would have to

avoid concentrated exposure to hazards, machinery, and heights; and (5) was limited to simple,

routine, repetitive tasks requiring occasional contact with coworkers and no interaction with the

public, Id. at 312, the vocational expert testified that although the limitations precluded

claimant's past relevant work, they allowed for jobs in assembly and production (924 positions

regionally and 59,500 nationally), and inspection, testing and sorting (888 regionally and 14,722

nationally).  Id. at 313.

### g.      Sokharith Mey, M.D. ("Dr. Mey"), Claimant's Primary Care
         Physician

In June 2007, during a routine physical examination, claimant reported that he recently

had lost his job as a deliveryman for a beer company due to drinking.  Id. at 186-188.  Dr. Mey

diagnosed claimant with depression and issued him a prescription for Celexa, Id. at 188, which

was switched to Wellbutrin a month later after claimant reported an allergic reaction.  Id. at 184-185.

        **h.        Jane Marks, M.D. ("Dr. Marks"), Massachusetts Disability Determination Services (DDS) Psychiatrist**

On August 6, 2007, Dr. Marks reviewed claimant's medical records and completed a psychiatric assessment.  Id. at 128-140.  Dr. Marks opined that claimant's primary problem was alcohol abuse and that his mental limitations would likely be non-severe with sustained sobriety.  Id. at 140.  She also opined that claimant had "mild" limitations in his activities of daily living, his social functioning, and his ability to maintain concentration, persistence, or pace.  Id. at 138.

        **i.        Emergency Room:**

On April 5, 2007, claimant was brought to the emergency room after making suicidal threats to police officers who had responded to a drug-related disturbance between claimant and his roommate.  Id. at 112.  One attending emergency room doctor observed claimant as being agitated with a waxing and waning mental status.  Id.  Another described him as having an "altered mental status" due to alcohol. Id. at 114.  Claimant had a blood alcohol concentration ("BAC") of 294 mg/dL1, Id. at 116, and his urinalysis yielded a presumptive positive test for opioids.  Id. at 112, 116-117.

        **2.        Physical Impairments**

As physical impairments are not at issue, I lay them out only briefly.  In March 2005, before his alleged onset date of disability, claimant underwent an open reduction internal fixation to repair a displaced fracture in his left ankle, Id. at 121, which had healed completely.  Claimant then underwent arthroscopy to address pain and stiffness in the ankle in December 2005, Id. at 119, from which he fully recovered.  Id.  In June 2007, the claimant complained of numbness and tingling in the fingers of one of his hands, Id. at 194-195, but his PCP observed

everything was normal.  Id. at 104, 195.  In September 2007, an orthopedic surgeon examined claimant for complaints of low back pain, and diagnosed him with chronic low back pain and intermittent left lower extremity sciatica.  Id. at 210.  In May 2008, claimant sought treatment for constant, "piercing" low back pain radiating into his left foot, Id. at 216-218, and his PCP noted that his motor and sensory capacities were intact.  Id. at 217.

## III.    ADMINISTRATIVE LAW JUDGE'S DECISION

In determining whether the claimant is disabled under the Social Security Act, the ALJ must follow a five-step sequential evaluation process to determine whether a person is eligible for disability benefits.  See 20 C.F.R. § 416.920.  The ALJ must consider (1) whether the claimant has shown she is not currently performing "substantial gainful activity"; (2) whether the claimant's impairment is severe and lasting; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant's RFC precludes her from performing her past work; and (5) whether, after considering the claimant's RFC, age, education, and work experience, jobs exist within the national economy that the claimant is able to perform.  Id.  The Residual Functional Capacity (RFC) determination fits between step three (3) and four (4).  20 C.F.R. § 404.1520 (e).

In applying the regulatory sequential evaluation process in this case, the ALJ found at step two (2) that claimant had the following severe impairments: alcohol dependence in partial remission; generalized anxiety disorder; low back pain; and status post left ankle arthroscopy and hardware removal.  A.R. at 12-13.

At step three (3), however, the ALJ found that claimant's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Id. at 13-14, explaining that claimant's mental impairment did not meet the criteria of listings of 12.06

because claimant only had moderate limitations in activities of daily living, social functioning, concentration, persistence, and pace, and that he had experienced only one or two episodes of decompensation.[1]  Id. at 14.  What is important for this appeal is that the ALJ further found that, despite a history of alcohol and drug abuse, claimant's substance addiction disorder did not meet the listings of 12.09(A)-(D).  Id.  It is here at step three (3) that claimant argues the ALJ erred in finding alcohol as a material factor contributing to his disability (and thus finding claimant not disabled in the absence of alcohol) because the ALJ improperly disregarded Dr. Price's letter stating otherwise.  In discrediting Dr. Price's opinion, the ALJ explained that Dr. Price was not recognized by the Social Security Administration as an "acceptable medical source" because he was not a licensed psychologist, and thus would be deemed a "non-medical source"; that Dr. Price's opinion was afforded little weight because he identified alcohol abuse as a chronic problem without reconciling this abuse with his clinical assessment of the claimant as disabled; and that greater weight was given to the opinions of Rusnak, a psychological consultative examiner, and Dr. Lawrence, the agency psychologist who provided a mental impairment assessment, on the grounds that the two sources were familiar with the rules and regulations of the Social Security Administration and reviewed the claimant's longitudinal history.  Id. at 16.  This point will be further discussed later in this opinion.

At the RFC stage, the ALJ determined that claimant, despite his impairments, had the RFC to perform light work, except that he could only stand for four hours and sit for six hours in an eight hour workday and would have to avoid exposure to hazardous machinery and heights. Id. at 15.  At step four (4), finding that the claimant's RFC would preclude him from performing

---

[1] Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  A.R. at 14.

his past work, the ALJ found that claimant was limited to simple, routine, repetitive work involving only occasional interaction with coworkers and no interaction with the general public. Id. Finally at step five (5), the ALJ determined that claimant could perform jobs existing in significant numbers in the national and regional economies. Id. at 17-18. Accordingly, the ALJ denied claimant's eligibility for Social Security benefits, Id. at 19, which was subsequently upheld by the Decision Review Board, making the ALJ's decision the Commissioner's final determination.

**IV.    STANDARD OF REVIEW**

On judicial review of an ALJ's decision, the court has the option of either affirming, reversing, or modifying the Social Security Commissioner's decision, with or without remanding the cause for a rehearing.[2] Judicial review of an ALJ's decision is limited and deferential. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). While the Court reviews whether the ALJ applied the proper legal standard de novo, Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000), the Court reviews the ALJ's factual findings to determine whether they were based on substantial evidence. 42 U.S.C. § 405 (g); see also Nguyen, 172 F.3d at 35. Substantial evidence exists if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support" the ALJ's conclusions. Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The responsibility for determining credibility, resolving conflicts amongst the evidence, and ultimately determining whether a disability exists, rests with the ALJ, not with the

---

[2] See 42 U.S.C. § 405 (g) ("The court shall have power to enter…a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing . . . [T]he court shall review only the question of conformity with such regulations[.] The court may . . . remand the case . . . for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

courts or doctors.  Id.  A reviewing court may only invalidate an ALJ's findings if they were

"derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."

Nguyen, 172 F.3d at 35.

## V.    ANALYSIS

The issue in this case involves the extent to which the claimant's alcohol use affects his

disability.  Under the Social Security regulation, an individual is *not* disabled under the Act if

alcoholism or drug addiction would be "a contributing factor material to" the Commissioner's

determination that the individual is disabled.  42 U.S.C. § 423(d)(2)(C).  In other words, a

claimant is not entitled to disability benefits *unless* his limitations would *remain disabling even

in the absence of drugs or alcohol*.  Claimant here argues that the ALJ erred at step three (3),

where he found that, despite a history of alcohol and drug abuse, plaintiff's substance addiction

disorder did not meet the listings of 12.09(A)-(D).  A.R. at 14.  Claimant argues that there was

no substantial evidence to conclude that alcohol was a material factor contributing to his

disability because the ALJ improperly disregarded Dr. Price's letter stating otherwise.

To answer whether the ALJ gave sufficient consideration to Dr. Price's opinion,

particularly the letter that was submitted after the hearing but well before the ALJ made any

decision, the following four elements need to be considered: (1) the role that alcohol played in

claimant's disability determination; (2) the status of Dr. Price and his opinion (whether he falls

under any of the enumerated "acceptable medical sources"); (3) the proper weight to be given

him (whether Dr. Price is a treating source, and if so, whether he deserves controlling weight);

and (4) whether the ALJ erred in not pursuing any further clarification from Dr. Price

notwithstanding the alleged inconsistencies in his opinion.  I address each element in more detail

below.

## A.     Role of Alcohol Use in Disability Determination

Under the Social Security regulation, a claimant is *not entitled* to disability benefits *unless* his limitations would *remain* disabling *even in the absence of drugs or alcohol*.  Def.'s Mem. at 16 n. 10.  Thus, if the SSA finds that the applicant is disabled and have medical evidence of drug addiction or alcoholism, the agency must determine whether his drug addiction or alcoholism is a contributing factor material to the determination of disability.[3]

The ALJ pointed out to Dr. Price's failure to explain the role of drug or alcohol dependence in claimant's impairment as the major grounds for his denying claimant's eligibility for SSI benefits.  A.R. at 16.  The ALJ stated that Dr. Price's opinion (that claimant's alcohol use was not a materially contributing factor in what he considered to be marked mental functional limitations), Id. at 273, was inconsistent with Dr. Price's own reports, which continually listed alcohol abuse as a chronic problem for the claimant.  Id. at 16, 166, 219, 231, 247.  The ALJ also found the opinion inconsistent with the other expert opinions, Id. at 122-127, 196, as well as with other evidence in the record.  Id. at 123, 179-180, 296-298 (claimant's own statements on drinking during certain time period); Id. at 145, 273, 293 (claimant's continued alcohol consumption in varying amounts); Id. at 112-118 (drugs and alcohol as factors in the single incident in which claimant presented to the emergency room for suicidal ideation); Id. at 16, 152,

---

[3] For the process and implications of such determination, see 20 C.F.R. § 404.1535 (b) (1)-(2) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is *whether we would still find you disabled if you stopped using drugs or alcohol*. (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling. (i) If we determine that your remaining limitations would *not* be disabling, we will find that your drug addiction or alcoholism *is* a contributing factor material to the determination of disability. (ii) If we determine that your remaining limitations are disabling, you are *disabled independent of* your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is *not* a contributing factor material to the determination of disability").

163, 196, 244-249 (decrease in claimant's psychiatric symptomatology corresponded to periods of alleged sobriety).

The problem with the ALJ's findings on the role of alcohol in this case, however, is not so much about his criticism of Dr. Price's inconsistencies, but more about the weight that he assigned between the different sources of opinion testimony. The ALJ simply said in his decision that he "gave little weight to Dr. Price's opinion" because he is not an "acceptable medical source" and instead gave more weight to Rusnak and Dr. Lawrence's opinions because they are "familiar with the rules and regulations of the Social Security Administration and had the opportunity to review the claimant's longitudinal history." Id. at 16. To determine whether the ALJ properly assigned weight to each source, we first need to define the status of Dr. Price under the regulation, on which the following section elaborates.

### B.     Status of Dr. Price

As to sources who can provide evidence to establish an impairment, the Social Security regulations provide in pertinent part:

> We need evidence from *acceptable medical sources* to establish whether you have a medically determinable impairment§. Acceptable medical sources are…licensed or certified psychologists[, including] school psychologists, or *other licensed or certified individuals with other titles* who perform the same function as a school psychologist in a school setting[.]

20 C.F.R. § 404.1513 (a) (2) (emphases added).[4]

The ALJ's decision, as well as the defendant's argument, is almost entirely based on the fact that Dr. Price is "not a licensed psychologist." A.R. 16; Def.'s Mem. at 16. Defendant claims that, because there is no indication that Dr. Price is a licensed or certified psychologist or

---

[4]As to sources other than "acceptable medical sources," see 20 C.F.R. § 404.1513 (d) (1) ("Other sources include . . . nurse-practitioners, physicians' assistants, . . . and therapists").

any other regulatorily-defined acceptable medical source under 20 C.F.R. § 404.1513 (a), Dr. Price can only be considered an "other source" under 20 C.F.R. § 404.1513 (d) (1), and thus not eligible for a treating-source status. Def.'s Mem. at 16, n. 9.

Licensed or certified psychologist, however, is only one of the many enumerated categories of profession considered to be acceptable medical source under 20 C.F.R. § 404.1513 (a) (2). In fact, Dr. Price is a licensed mental health counselor ("LMHC"), as the Massachusetts Division of Professional Licensure confirms,[5] A.R. at 168, 232, as does the Lynn Community Health Center.[6] In light of this, an argument could be made that Dr. Price was one of "other licensed or certified *individuals with other titles who perform the same function as* a school psychologist in a school setting" under 20 C.F.R. § 404.1513 (a), which in turn would qualify Dr. Price as an "acceptable medical source." 20 C.F.R. § 404.1513 (a). As such, the defendant's primary argument that "there is no indication that Dr. Price is a licensed or certified psychologist or any other regulatorily-defined acceptable medical source," is flawed, undermining the attempt to discredit Dr. Price's opinion regarding the relationship between the plaintiff's drinking and disability.

C.     Weight Apportionment

---

[5] See the official website of the Massachusetts Office of Consumer Affairs & Business Regulation (OCABR), Division of Professional Licensure, http://license.reg.state.ma.us/public/pubLicenseQ.asp?board_code=MH&type_class=CC&license_number=000000588&color=red&lb=MH (last visited February 3, 2011) (identifying Dr. Price as a licensed mental health counselor since May 14, 1992, license #588).

[6] See the official website of the Lynn Community Health Center, http://www.lchcnet.org/getting-care/provider/stephen-c-price-phd-lmhc-ladc (last visited January 9, 2011) (identifying Dr. Price as a licensed mental health counselor (LMHC), licensed alcohol and drug counselor (LADC), and certified psychoanalyst, who has completed residency at the Metropolitan State Hospital and is currently on the faculty of the Boston graduate School of psychoanalysis).

The status of Dr. Price is the basis on which to determine how much weight should be given to his opinion.[7] When assigning weight to "treating sources" without controlling weight,[8] the following factors are to be applied:

> (I) *Length* of the treatment relationship and the *frequency* of examination; (ii) *Nature and extent* of the treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) *Other factors*.

20 C.F.R. § 404.1527 (d) (2) (I)-(ii); (3)-(6) (emphases added).[9]

The ALJ in this case categorically dismissed Dr. Price's opinion as not entitled to any special weight under 20 C.F.R. § 404.1527(d)(2). Instead, the ALJ gave greater weight to the opinions of Dr. Jonas (a board certified psychiatrist), Rusnak (the consultative examining psychologist), and Dr. Lawrence (an agency psychologist), on the grounds that they all reviewed claimant's longitudinal medical history prior to making their assessments, A.R. at 16, 122-127, 196, 295-304; discussed claimant's use of alcohol and its role in his mental impairments, Id. at

---

[7] See 20 C.F.R. § 404.1527 (d) (1)-(2) for the methods of weighing different medical opinions ("[Unless we give a treating source's opinion controlling weight], we consider *all* of the following factors in deciding the weight we give to any medical opinion. (1) *Examining relationship* . . . [W]e give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you. (2) *Treatment relationship* . . . [W]e give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a *detailed, longitudinal picture* of your medical impairment§ and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

[8] See 20 C.F.R. § 404.1527 (d) (2) ("[W]e apply the factors listed [below] in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). As to when to give a treating source a controlling weight, see 20 C.F.R. § 404.1527 (d) (2) ("If we find that a treating source's opinion on the issue§ of the nature and severity of your impairment§ is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight").

[9] See 20 C.F.R. § 404.1527 (d) (6) for what is meant by "other factors" when assigning weight to treating source's opinion ("[T]he amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion").

16, 122-127, 196, 301-303, 308; and better understood the Social Security regulations governing substance abuse.  Id. at 16; see 20 C.F.R. §§ 404.1527(d), 404.1535.

What the ALJ did not explain, however, was that Dr. Price has been treating the plaintiff since August 2007, and in particular, has held biweekly individual counseling sessions for over a year from November 5, 2007, right up to the ALJ hearing on November 13, 2008.  In other words, Dr. Price not only is a qualified mental health, alcohol and drug counselor, but also has maintained a longstanding treating relationship with claimant involving frequent counseling sessions on a regular basis for over a year.  Insofar as Dr. Price can be categorized as an "acceptable medical source" under 20 C.F.R. § 404.1513 (a) (2), the length, nature and extent of his relationship with claimant should qualify him as at least one of claimant's treating sources, along with Dr. Mey, his PCP, and Nurse Randall.  The duration of the treatment relationship should also suggest that Dr. Price was able to conduct a longitudinal examination of the claimant under 20 C.F.R. § 404.1527 (d) (2) (I)-(ii), much more so than Rusnak and Dr. Lawrence.  His opinion certainly involved issues critical to claimant's disability determination.  In contrast, those sources that the ALJ gave more weight to either did not even examine the claimant at all (Dr. Lawrence, Dr. Jonas) or examined on only a single instance (Rusnak).  As the court in Rosario v. Apfel, 85 F. Supp. 2d 62 (D.Mass. 2000), noted, reports from non-examining advisors cannot by themselves "trump the findings" from treating physicians.[10]  85 F. Supp. 2d at 67.  The

---

[10] In Rosario v. Apfel, this Court found that the ALJ's decision to give more weight to the opinion of the non-treating, non-examining physicians did not rest on substantial evidence.  85 F. Supp. 2d 62, 67 (D.Mass. 2000) (quoting Rodriguez v. Sec'y of Health & Human Serv., 647 F.2d 218, 222 (1st Cir. 1981)).  The Court noted that the treating physician's "long treating relationship" with the claimant, her extensive knowledge of his impairments, and her status as the only examining physician "should have persuaded the ALJ to give controlling weight to her opinion, in preference to the inconsistent views of the non-treating physicians," that reports from non-examining advisors cannot by themselves "trump the findings" from treating physicians, and that the ALJ should have given the treating physician's opinion controlling weight, since the only contrary evidence was reports from the non-examining physicians.  Id. (quoting Shaw v. Sec'y of Health & Human Servs., 25 F. 3d 1037, 1994 WL 25100, *3 (1st Cir. 1994)).

ALJ should have at least given the treating psychoanlayist/counselor's opinion equal or more weight than to reports from the non-treating or non-examining sources.

Moreover, the law requires the SSA to consider *all* of the available evidence in the individual's case record in every case. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 at *2 (Aug. 9, 2006). Evidence includes, but is not limited to, opinion evidence from "acceptable medical sources," medical sources who are not "acceptable medical sources," and "non-medical sources" who have seen the individual in their professional capacity. The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, and the issue that the opinion is about. The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving a greater weight than to an opinion from a non-acceptable medical source,[11] but depending on the particular facts of a case, and after applying the factors for weighing opinion evidence, even an opinion from a non-acceptable medical source may outweigh the opinion of an "acceptable medical source," including that of a treating source.

In light of the regulatory provisions, even if Dr. Price did not qualify as an acceptable medical source as defendant argues, it is worth noting that the Social Security regulations do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d), in contrast to the specific criteria provided for evaluating medical opinions from "acceptable medical sources" under 20 C.F.R. § 404.1513 (a). The one thing clear about 20 CFR 404.1527 and 416.927 is that they do require consideration of evidence from "other sources" when evaluating an "acceptable medical source's" opinion. For example, 20 C.F.R. § 404.1527 (6) requires adjudicators to consider any other factors brought to

---

[11] Preamble to the regulations at 65 C.F.R. 34955 (June 1, 2000).

SSA's attention, or of which SSA are aware, which tend to support or contradict a medical opinion. Information, including opinions, from "other sources" – both medical and non-medical sources – can be important in this regard. This means that, regardless of Dr. Price's status, the ALJ should have given more weight to Dr. Price's opinion than he actually did, in light of Dr. Price's relationship with claimant through steady counseling sessions over a significant period.

### D. Need for Further Clarification

Depending on Dr. Price's status, the ALJ was either required (as a treating physician) or permitted (as any other source) to re-contact Dr. Price in order to clarify his opinion,[12] following a particular procedure,[13] and incorporating additional evidence.[14]

Upon the claimant's request during the hearing, the ALJ expressly allowed Dr. Price's opinion to be submitted after the hearing, concerning whether alcohol was a contributing factor material to claimant's disability. A.R. 309. Admittedly, the letter arrived four days later (November 24, 2008) than was originally set by the ALJ (November 20, 2008), Id. at 316, but it was made a part of the record nonetheless. Id. at 273. Claimant argues that, as the post-hearing evidence was made part of the record before the ALJ issued his decision (February 24, 2009), the

---

[12] See 20 C.F.R. § 404.1527 (c) (2)-(4) ("If any of the evidence . . . is *inconsistent* with other evidence or is internally inconsistent, we will weigh *all* of the evidence . . . If the evidence is consistent but we do *not have sufficient evidence* . . . , we will try to *obtain additional evidence*[.] We will *request additional existing records*, *recontact* your treating sources or any other examining sources, ask you to undergo a *consultative examination* at our expense, or ask you or others for *more information* . . . [W]hen *despite efforts to obtain additional evidence* the evidence is not complete, we will make a determination or decision based on the evidence we have").

[13] See 20 C.F.R. § 416.912 (e) ("We will first recontact your treating physician or psychologist or other medical source . . . when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques").

[14] See 20 C.F.R. § 404.936 (a) ("[T]he administrative law judge may adjourn or postpone the hearing or reopen it to receive additional evidence any time before he or she notifies you of a hearing decision"); 20 C.F.R. § 404.944 ("The administrative law judge may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing at the hearing . . . [and] may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence").

fact that the evidence was submitted after the hearing is irrelevant, yet the ALJ is silent about the letter when pointing out to the inconsistency of Dr. Price's opinion.

Defendant argues that, just because the ALJ did not explicitly cite to Dr. Price's letter of November 24, 2008, in his decision does not necessarily mean that he did not consider it as part of Dr. Price's overall clinical assessment. Def.'s Mem. at 17 n. 11. This particular piece of evidence, however, was not just any evidence but an essential link that might have filled in the gap in the existing body of evidence regarding the correlation between alcohol and disability. Without the ALJ's adequate justification, it is impossible to determine whether this evidence was considered and implicitly discredited or instead was simply overlooked.[15]

In justifying his decision not to re-contact Dr. Price for clarification, the ALJ states that there was sufficient *other evidence* in the record upon which he could draw a reasonable determination about claimant's mental limitations. The ALJ, however, never specifies which other evidence in the record he was referring to. As noted earlier, the ALJ states that he assigned more weight to Dr. Jonas, Rusnak, and Dr. Lawrence, than to Dr. Price, who the ALJ discredited for inconsistencies in his opinion. But the inconsistencies were between everyone – Dr. Jonas criticized the inconsistencies found in Dr. Price's opinion, A.R. at 308, but Dr. Lawrence likewise pointed out to the inconsistency in Rusnak's consultative examination result. Id. at

_____

[15] The Court in Lord v. Apfel held that since "the ALJ's decision completely failed to mention any of the *post-hearing evidence*, it was impossible to determine whether this evidence was considered and implicitly discredited or instead was simply overlooked." 114 F. Supp. 2d 3, 14 (D.N.H. 2000). The court concluded that the ALJ committed legal error in failing to address a treating physician's opinion letter in her decision, noting that while the ALJ was entitled to find this opinion "unworthy of credit, she was not entitled to find it unworthy of comment." Id. at 15-16. In so holding, the court noted that the SSA's regulations and directives allow for a claimant to submit additional evidence after an administrative hearing but before the ALJ renders her decision. Id. at 13.

196.[16] Yet, the ALJ does not provide any specific reason why he nonetheless credited Rusnak's opinion and discredited that of Dr. Price.

The ALJ failed to re-contact the treating psychotherapist for clarification prior to rejecting his qualified medical opinion, failed to consider said specialist's opinion which was submitted post-hearing, and erred in giving deference to non-treating sources over that of the treating psychotherapist. This goes against the Social Security regulations requiring the ALJ to consider and evaluate *all* relevant evidence, whether objective or subjective, in determining whether a claimant is disabled.

## VI.    CONCLUSION

For the foregoing reasons, the Claimant's Motion to Reverse or Remand the Decision of the Commissioner of Social Security **(document #13)** is **GRANTED**, and Defendant's Motion for Order Affirming Decision of Commissioner **(document #14)** is **DENIED**. The decision of the ALJ is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED.**

**Date:  February 15, 2011**              /s/ *Nancy Gertner*

                                          **NANCY GERTNER, U.S.D.J.**

---

[16] Dr. Lawrence stated in his case analysis that Rusnak's diagnosis of claimant with Generalized Anxiety Disorder was "a most peculiar conclusion," since there was no symptom of anxiety cited in the report, either alleged as having occurred in the past, or alleged or observed during the interview, and judged that [Rusnak's] report was "of limited value." A.R. at 196.